# United States Court of Appeals
## For the Eighth Circuit
_____

No. 25-2707
_____

Joshua Glasscock, on behalf of himself and all others similarly situated,

*Plaintiff - Appellee*

v.

Sig Sauer, Inc.

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Springfield
_____

Submitted: April 16, 2026
Filed: July 16, 2026
_____

Before LOKEN, SHEPHERD, and STRAS, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Appellant Sig Sauer, Inc. (Sig) makes a handgun called the P320. Some P320s lack manual safeties, though consumers can purchase P320s that come with such safeties if they wish. The P320 also allegedly features a light trigger pull and is immediately capable of firing once a user chambers a round. Appellee Joshua Glasscock—who asserts a single claim against Sig for a violation of the Missouri Merchandising Practices Act—contends that these features combine to make the gun

defective. Glasscock represents a freshly certified class generally composed of "[a]ll persons who purchased a Sig Sauer model P320 pistol without an external thumb safety primarily for personal, family or household purposes in the state of Missouri from September 1, 2017, through the present." But he admits that he has neither inadvertently discharged his P320 nor otherwise "had any issues with the pistol." Sig appeals, contending that the district court improperly granted class certification because Glasscock lacks Article III standing. We agree. Having jurisdiction over this appeal under 28 U.S.C. § 1292(e) and Federal Rule of Civil Procedure 23(f), we vacate the district court's class certification order and remand with instructions to dismiss Glasscock's suit for lack of standing.

A "district court has broad discretion to decide whether [class] certification is appropriate." Johannessohn v. Polaris Indus. Inc., 9 F.4th 981, 984 (8th Cir. 2021) (citation omitted). But a district court may not certify a class defined in such a way that "it contains members who lack standing." Id. at 987 (citation omitted). A plaintiff cannot satisfy Article III's standing requirements unless he shows that he suffered an "injury in fact"—that is, "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992) (citation omitted). We review standing challenges de novo. In re Zurn Pex Plumbing Prods. Liab. Litig., 644 F.3d 604, 616 (8th Cir. 2011).

In its class certification order, the district court rejected Sig's standing challenge, reasoning that Glasscock "has sufficiently alleged injury to confer Article III standing regarding the injury-in-fact requirement." We respectfully disagree.

Our cases make clear that a product-defect plaintiff like Glasscock must show that he owns a product in which the alleged defect has manifested itself to meet the injury-in-fact requirement for Article III standing. See, e.g., Johannessohn, 9 F.4th at 987-88; In re Polaris Mktg., Sales Pracs., & Prods. Liab. Litig., 9 F.4th 793, 796-97 (8th Cir. 2021). But Glasscock, having admitted that he has had no issues

(including inadvertent discharge) with his P320, did not make that showing.  Under the manifest defect rule our cases establish, Glasscock lacks standing.

Glasscock attempts to avoid this conclusion by arguing that the P320 suffers from a universal design defect.  According to him, each P320 is manifestly defective because each gun as designed includes the same set of features, and these features create an inherent danger present in each gun.  As Glasscock puts it, a manifest defect exists in his gun because "the alleged Defect is that the P320 is always unreasonably dangerous for its intended use because of the combination of its three unique characteristics."  But what is the unreasonable danger that Glasscock is so concerned about?  Transparently, it is the risk that the P320 will discharge when its user does not intend it to.  Glasscock's pleadings are rife with references to that alleged danger, and he identifies no other risk that the P320's design presents.  In essence, what Glasscock alleges is that the P320's design predisposes it to inadvertent discharges.  But that is not enough under the manifest defect rule.  See, e.g., In re Polaris, 9 F.4th at 796-97 (recognizing that allegations of "nothing more than . . . ownership of a product that is at risk for manifesting a defect" do not satisfy the manifest defect rule).  The fact that the purported inadvertent discharge danger has not come to pass is fatal to Glasscock's standing.

We have repeatedly rejected the exact defective-design end run that Glasscock attempts to make around the manifest defect rule here.  In Johannessohn, the plaintiffs contended that the way Polaris had designed its all-terrain vehicles (ATVs) presented a melting risk to the ATVs and a burn risk to their riders.  9 F.4th at 987.  But we still concluded that some members of the plaintiffs' proposed class lacked standing because *their* ATVs had not caused such injuries.  Id.  We explained that the plaintiffs' argument that "there is an inherent heat defect common to all Polaris ATVs . . . misse[d] the mark" because "what matters is whether the heat caused injury."  Id.  Similarly, in Briehl v. General Motors Corp., we applied the manifest defect rule and affirmed the dismissal of the plaintiffs' complaint where the plaintiffs alleged that the brake system in their vehicle was dangerous because it was *designed* in a counterintuitive way, but where the plaintiffs experienced no brake system

-3-

failures. 172 F.3d 623, 626, 628 (8th Cir. 1999). There is no daylight between Glasscock's design-defect theory and the plaintiffs' design-defect theories in these cases. And indeed, Glasscock does not even attempt to distinguish Briehl. Because the danger the P320 allegedly presents was never realized, Glasscock cannot overcome the manifest defect rule.

Glasscock also tries to analogize his case to Zurn. In that case, the plaintiffs alleged that the defendant's home plumbing systems were susceptible to, and universally developed, stress corrosion cracking. Zurn, 644 F.3d at 609. The defendant invoked the manifest defect rule and argued that the "dry plaintiffs"—the plaintiffs whose plumbing systems had not yet started to leak—lacked standing. Id. at 616. We held that the manifest defect rule did not defeat standing, reasoning that "[t]he dry plaintiff claims are distinct from any brought by hypothetical 'no injury plaintiffs,'" because the dry plaintiffs had not merely alleged that their plumbing systems had a "risk" of developing stress corrosion cracking, but instead had alleged that stress corrosion cracking occurred in all "fittings upon use, regardless of water conditions or installation practices." Id. at 617. In other words, the manifest defect rule was satisfied because cracking occurred in all systems—including those that had not yet leaked.

Zurn is not analogous to the case before us and offers Glasscock no help. Here, Glasscock at most has shown that his P320 has a set of features that may increase the risk that it will fire when he does not want it to. But for Zurn to be analogous, Glasscock would have to show that every P320, including his, fires when its owner does not desire it to. Obviously, that is not the case. If anything, Zurn underscores why Glasscock has failed to show he has standing to assert a product-defect-based claim against Sig.

Finally, Glasscock argues that he suffered an injury in fact because he was deprived of the benefit of his bargain. His theory is essentially that the P320's purported defect makes it worth less than he paid for it. But this argument—supported only by his expert's ipse dixit—is wholly speculative. And it

is in tension with our manifest defect cases.  See Johannessohn, 9 F.4th at 988 ("At its core, Appellants' [benefit-of-the-bargain] argument is that purchasers without manifest defects should be able to piggyback on the injury caused to those with manifest defects.  That theory is in direct conflict with the manifest defect rule and does not create an Article III injury-in-fact.").  Glasscock's benefit-of-the-bargain theory does not suffice to support standing, at least until some sort of injury in fact, economic or otherwise, manifests itself.  See Lujan, 504 U.S. at 564 (explaining that future "intentions" are not enough for standing).  Until then, his supposed injuries are "too speculative" to count.  Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013) (citation omitted).

Because Glasscock lacks standing, the district court erred in certifying the class.  See Johannessohn, 9 F.4th at 988 (recognizing that a class that "has not been 'defined in such a way that anyone within it would have standing' . . . cannot be certified" (citation omitted)); Zurn, 644 F.3d at 616 (same).  Moreover, because Glasscock is the only named plaintiff in this suit, his lack of standing means this case must be dismissed.  See Frank v. Gaos, 586 U.S. 485, 492 (2019) ("[F]ederal courts lack jurisdiction if no named plaintiff has standing."); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Based on the foregoing, we vacate the district court's class certification order and remand with instructions to the district court to dismiss Glasscock's complaint for lack of jurisdiction.

_____